## CITY OF MARSHALL v. CHARLES O. KALMAN AND OTHERS.[1]

November 3, 1922.

No. 22,805.

**Consideration for contract—Bailey v. Austrian distinguished.**

    1. If, by accepting an offer to sell, the buyer has fettered his freedom to buy from whomever he pleases, or if, by the contract of sale, the seller has restricted his freedom to sell to others, there is a sufficient consideration for the contract. Bailey v. Austrian, 19 Minn. 535, distinguished.

**Part performance of executory contract of sale warrants enforcement of unexecuted part.**

    2. The partial performance of an executory contract of sale is a sufficient consideration to support all its provisions and to warrant the enforcement of the unexecuted portions thereof.

[1]Reported in 190 N. W. 597.

**Municipal contract for sale of certificates of indebtedness enforceable without compliance with section 1856.**

3. A contract by a city for the sale of its certificates of indebtedness to be issued under chapter 65, Laws 1919, is enforceable, although the sale is to be made without complying with the requirements of section 1856, G. S. 1913. Such a contract is not void as one ultra vires in the primary sense of that term.

**Contractor with city estopped after part performance of contract.**

4. The other party to such a contract, after enjoying the benefits of the partial performance thereof by the city, is estopped from asserting that the city had no power to enter into the contract.

**Contract construed to include certificates of two years.**

5. Construing the contract in question, it is *held* that it embraces street improvement work done by the city and certificates of indebtedness issued in the years 1919 and 1920.

**Contract did not require a violation of the statute.**

6. The contract provided that the certificates should mature in each year from 2 to 10 or 20 years. Chapter 65 provides that such certificates shall be paid in annual instalments extending over a period not exceeding 20 years. *Held* that it was within the power of the city to comply with the terms of the contract without violating the statute.

**Breach occurred before exercise of option given to the plaintiff.**

7. Defendants' refusal to perform the contract gave rise to a present cause of action, although by the terms of the contract the city was given a choice between two alternatives when it issued the certificates and had not made a choice before bringing the action.

**Demurrer to complaint should be overruled if cause of action is stated.**

8. A complaint is not demurrable because damages are claimed which may not be recoverable, for it, on any view of the facts pleaded, a cause of action is stated, a demurrer should be overruled.

Action in the district court for Lyon county to recover $36,000 for breach of contract. Defendants' demurrer to the complaint was overruled by Olsen, J. From the order overruling their demurrer, defendants appealed. Affirmed.

*Moore, Oppenheimer, Peterson & Dickson,* for appellants.

*James H. Hall* and *Denegre, McDermott, Stearns & Weeks,* for respondent.

LEES, C.

Appeal from an order overruling a demurrer to the complaint interposed on the ground that the facts stated do not constitute a cause of action, the court having duly certified that the demurrer raised important and doubtful questions.

The action was brought to recover damages for the breach of a contract to purchase or find purchasers for certificates of indebtedness issued by plaintiff pursuant to chapter 65, p. 62, Laws 1919. On December 26, 1918, defendant presented a communication to the city council, reading as follows:

"We propose to finance you for street improvement work you may do in the year 1919 on the following basis:

For all bonds which you may issue during said term for the above stated purpose, we agree to pay you the par value thereof together with accrued interest * * * and in addition thereto a premium sufficient to reduce the net rate of interest to $5\frac{1}{4}\%$ * * * We further agree that we will immediately use our best efforts to secure the passage of an adequate law through the State Legislature to enable the City of Marshall to carry on its proposed street work. * * * For the services to be performed by us as heretofore set forth, you are to pay us the sum of $750.00."

On May 19, 1919, defendants presented a second communication to the council reading in part as follows:

"We have carried out the first steps in the contract entered into with you on December 28th, 1918, and have prepared and secured the enactment of Chapter No. 65, General Laws of Minnesota 1919, enabling you to construct a large amount of paving without the inconvenience and expense of an election. * * * We now offer to alter said contract in the following particulars:

(1) We will pay you par and accrued interest from date of issue to date of delivery, for certificates issued under the above law and give you the choice of two arrangements as follows:

(a) Maturities to be in substantially equal amounts each year from 2 to 10 years or to 20 years if the Council elects and interest rate $5\frac{1}{2}\%$, we to reduce our allowance for outlays and services from $750.00 to $600.00 paying the costs of blank certificates or bonds, attorney services, etc., out of said allowance.

(b) We will guarantee you a purchaser at a price of at least par and accrued interest for said certificates or bonds bearing five per cent interest and maturing in equal annual instalments from 2 to 10 years, you to allow us for outlays and services in connection therewith, when and as said certificates are taken up and paid for, two per cent of the face value of all certificates issued, we to pay all costs of blank certificates, attorney services, etc., out of said allowance.

(2) Our obligation hereunder to cease November 1, 1920, but we are to have the option thereafter to consummate such purchase and guaranties good to such date as the City may be ready to complete same.

(3) Our obligation hereunder (and option) to be limited to an aggregate of $400,000, but it is understood that all paving work of the City will be done under this agreement up to said limits."

Each proposal was duly accepted, and during the year 1919, pursuant to the determination of the council in March and June of that year, certain streets were paved at an expense of $185,000. To meet the expense, certificates of indebtedness were issued under the authority granted by chapter 65. There were two issues, one of $125,000, authorized October 6, 1919, and the other of $60,000, authorized December 15, 1919. Defendants procured a purchaser for both issues on the terms specified in their proposal. Plaintiff paid defendants $2,500 after the first issue was sold, and $1,200 after the sale of the second issue. It also paid them $600 to cover the cost of blank certificates and attorneys' fees as stipulated in the second proposal.

On January 19, 1920, the council determined to pave other streets, and on March 1, 1920, entered into a contract for such paving. The contract price exceeded $298,000. Defendants were notified of the making of the contract and that the city would look to them to finance the project under the terms of their proposal of May 19. On April 3, 1920, defendants informed plaintiff's officers that they would neither purchase nor find a purchaser for the new certificates.

The complaint, after setting out these facts, alleged that plaintiff was ready, willing and able to issue certificates upon the terms and conditions specified in the proposal of May 19 and had so notified defendants, but they at all times refused to purchase or find a purchaser for such certificates. Allegations followed relating solely to damages, which were laid at $36,000.

1. Defendants urge that there was no valid executory contract because the city was under no obligation to do any paving and because it might have sold the certificates to any one without incurring liability to defendants, and hence, under the doctrine of Bailey v. Austrian, 19 Minn. 465 (535), the contract was not enforceable. This court has often considered and distinguished Bailey v. Austrian. 1 Notes on Minn. Rep. 807; Minneapolis Mill Co. v. Goodnow, 40 Minn. 497, 42 N. W. 356, 4 L. R. A. 202; Staples v. O'Neal, 64 Minn. 27, 65 N. W. 1083; Ames-Brooks Co. v. Aetna Ins. Co. 83 Minn. 346, 86 N. W. 344; Lapham v. Flint, 86 Minn. 376, 90 N. W. 780; Stauff v. Bingenheimer, 94 Minn. 309, 102 N. W. 694; Rotzien-Furber L. Co. v. Franson, 123 Minn. 122, 143 N. W. 253; Scott v. T. W. Stevenson Co. 130 Minn. 151, 153 N. W. 316. The case has been discussed in other jurisdictions. No exception can be taken to the statement of the abstract legal principle set forth in the opinion. But it is not a legal formula to be blindly applied to every contract which seems on its face to lack mutuality of obligation. Bailey v. Austrian was considered in Nat. Furnace Co. v. Keystone Mnfg. Co. 110 Ill. 427, where it was said that the decision turned on the use of the word "want" in the contract; and in Hickey v. O'Brien, 123 Mich. 611, 82 N. W. 241, 49 L. R. A. 594, 81 Am. St. 227, the same view was expressed. Dean Lawson, writ-

ing on contracts (9 Cyc. 330), says that Bailey v. Austrian was practically overruled by Ames-Brooks Co. v. Aetna Ins. Co. supra.

One test of the applicability of Bailey v. Austrian to such a contract as we have here is whether the buyer has so bound himself that he has lost the right to buy from whomsoever he pleases. If his freedom to contract has been fettered by the acceptance of the seller's proposal, a binding contract results. Nat. Furnace Co. v. Keystone Mnfg. Co. supra; Hickey v. O'Brien, supra; Conley Camera Co. v. Multiscope & Film Co. 216 Fed. 892, 133 C. C. A. 96.

In Ames-Brooks Co. v. Aetna Ins. Co. supra, it was urged that a contract having to do with insurance of cargoes of grain lacked mutuality of obligation, because plaintiff did not bind itself to have any cargoes to be insured and was at liberty, if it did have any, to insure them or not as it pleased. But the court held that the contract included by necessary intendment a promise on plaintiff's part not to give such insurance to any one else, and that this furnished a sufficient consideration for defendant's engagement. For the same reason it is held that when, by the acceptance of a proposal to buy, the seller has restricted his freedom to sell to others, a binding contract results. Ramey L. Co. v. John Schroeder L. Co. 237 Fed. 39, 150 C. C. A. 241; Burgess S. F. Co. v. Broomfield, 180 Mass. 283, 62 N. E. 367. The principle was applied in Rotzien-Furber L. Co. v. Franson, supra, where an obligation to sell was implied from the obligation of the other party to purchase. It applies to the case at bar. The city was bound to sell the certificates to the defendants, or to purchasers they might secure. If, perchance, it might have sold them on more advantageous terms to someone else, it could do so only at the risk of paying damages to defendants. Application of the principle is not limited to cases where an established business is involved. The existence of such a business makes possible the ascertainment with reasonable certainty of the quantity of goods needed to supply its requirements. The element of certainty is supplied by the provision obligating the city to deliver all certificates it may issue for a specified purpose up to a stated amount.

There is an additional reason for the conclusion that the contract has binding force and effect. In Stauff v. Bingenheimer, supra, it was held that the doctrine of Bailey v. Austrian did not apply where the plaintiff had accepted and signed a contract which did not obligate him to engage in selling defendants' lands, but had nevertheless undertaken to perform with the knowledge and consent of the defendant. In Lapham v. Flint, supra, it was held that the partial performance of a contract by the party who had not promised to do any act rendered it enforceable. Finally, in Scott v. T. W. Stevenson Co. supra, after a thorough review of the cases, it was held that the absolute and executed part of a contract is a sufficient consideration to support all the provisions of the contract and that, though performance by one of the parties is optional, if he has given a valuable consideration for his option, he may enforce the contract. These principles are applicable to the present case. There was at least a partial performance by both parties. The executed part of the contract was a sufficient consideration to support all its provisions, and, though it be conceded that further performance was optional with the city, it had given a valuable consideration for its option. The sale of certificates amounting to $400,000 was contemplated. Plaintiff might not have been willing to pay a 2 per cent commission and $600 in addition if defendants disposed of certificates amounting to no more than $185,000. Payment of the $600 item was a consideration for the option to require defendants to sell the additional certificates.

2. Defendants contend that the contract was contrary to public policy and that the city had no power to enter into it under any circumstances. The gist of the argument is that the certificates were bonds, and hence could not be sold except in the manner prescribed by section 1856, G. S. 1913. It was held in Pike v. City of Marshall, 146 Minn. 413, 178 N. W. 1006, that such certificates may be conceded to be the equivalent of bonds, and substantially the same statement was made in Oakman v. City of Eveleth, supra, page 117, 189 N. W. 932. In considering the contention, we will assume that certificates of indebtedness are bonds. Express authority to issue such certificates was conferred upon the city by section 9 of chap-

ter 65, but the act is silent as to how they are to be sold. In the Pike case it was said that the act is a complete workable law, prescribing the steps to be taken in detail, and it was held that sections 1854 and 1855, G. S. 1913, requiring the submission for approval by the voters of proposals to issue municipal bonds, did not apply to certificates issued under chapter 65. Respondent argues that by parity of reasoning neither has section 1856 any application. We are not prepared to so hold. It has been the policy of the legislature to surround the sale of municipal bonds with publicity. If the manner of sale was not expressly defined by statute, it would be easy to hold that there might be either a public or private sale, according to the determination of the council. But it is unnecessary to decide the question for reasons to be stated presently.

For the purpose of the argument, we will assume that section 1856 is applicable. The legislature has not said that a private sale of municipal bonds shall be illegal and void. This is what it has said:

"Before any such bonds are sold, at least two weeks' published notice shall be given of a meeting of the governing body to open and consider bids therefor. * * * At the time and place so fixed, the bids shall be opened, and the offer complying with the terms of such sale, and deemed most favorable, shall be accepted: Provided, that the governing body may reject any and all such offers, and award said bonds to a lower bidder, or, upon like notice, it may invite other bids."

When the statute was in substantially the same form it was considered in St. Paul Gaslight Co. v. Village of Sandstone, 73 Minn. 225, 75 N. W. 1050, and the court said:

"But it is urged * * * that the provisions of section 5, to the effect that, before any village shall be authorized to issue its bonds, it shall advertise them for sale, is not simply a condition precedent to the exercise of the authority to issue bonds, but is a jurisdictional prerequisite to the conferring upon the village authority to issue its bonds. If this be so, then the council derives its power to issue the bonds from its own acts, and not from the stat-

ute.  It could by its acts place itself in a position to exercise the authority conferred by the statute, but it could not create the authority.  The statute and the vote of the electors authorized the council in this case to issue and negotiate the bonds of the village, and the advertising of the sale of the bonds was only a condition precedent to the exercise of the power already conferred upon the council.  There was no lack of power on the part of the village to issue the bonds, but conditions were imposed on the exercise of the power."

This language was used with reference to bonds issued directly to a water company in payment for water works purchased by the village.  The case is in point here.  Power to issue certificates was expressly conferred, and advertising the sale thereof was at most a condition precedent to the exercise of the power.  A sale without complying with the condition was not an act beyond the scope of the city's powers under any circumstances or for any purpose.  Such an act was ultra vires, not in the primary but in the secondary sense. Minnesota Thresher Mnfg. Co. v. Langdon, 44 Minn. 37, 46 N. W. 310; Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L. R. A. (N. S.) 793, 120 Am. St. 621.  The contract was not void, and performance could not be refused because the city had disregarded section 1856.

There is an additional reason why defendants' position is untenable.  In this and many other jurisdictions the rule prevails that, when sued on its contract, a corporation may be estopped from asserting as a defense its alleged want of power to enter into the contract.  Olson v. Warroad M. Co. 136 Minn. 310, 161 N. W. 713. Whether there may be an estoppel where the contract is ultra vires in the primary sense is somewhat doubtful.  Bell v. Kirkland, supra. If such a contract is to be regarded as illegal, it should never be enforced but treated as utterly void.  The modern view is that the contract is not illegal in the sense of being void, but is merely unenforceable.  See note to Gilbert v. Citizens Nat. Bank, L. R. A. 1917A, 749, and 23 Harvard L. R. 495.  Since the corporation may be estopped from asserting that it exceeded its powers in entering

into the contract, it necessarily follows that the other party may also be estopped from defending on the ground that the corporate act was ultra vires. Oswald v. St. Paul Globe Pub. Co. 60 Minn. 82, 61 N. W. 902; Central Bldg. & Loan Assn. v. Lampson, 60 Minn. 422, 62 N. W. 544; Moore v. Thorpe, 133 Minn. 244, 158 N. W. 235. Cases to the same effect in other jurisdictions are collected in the note to Calumet & C. C. & D. Co. v. Conkling, L. R. A. 1917B, 814, and in 14a C. J. 330. It is illogical to assume that a doctrine invented to protect those who are directly interested in a corporation extends protection equally to those who deal with the corporation. They do not stand on the same footing as the state, stockholders in private corporations and taxpayers in municipal corporations. Crolley v. Minneapolis & St. L. Ry. Co. 30 Minn. 541, 16 N. W. 422; Merchants Nat. Bank v. Hanson, 33 Minn. 40, 21 N. W. 849, 53 Am. Rep. 5; Newell v. Minneapolis, L. & M. Ry. Co. 35 Minn. 112, 27 N. W. 839, 59 Am. Rep. 303; Baker v. Northwestern Guar. Loan Co. 36 Minn. 185, 31 N. W. 51; Senour Mnfg. Co. v. Church P. & Mnfg. Co. 81 Minn. 294, 84 N. W. 109. The conclusion follows that, after enjoying the benefits of the partial performance of the contract, defendants were estopped from asserting that the city had no power to enter into it.

3. Defendants contend that they fully performed the contract when they disposed of the certificates issued to pay for the pavement which was laid during the year 1919. The first proposal related to bonds issued in the year 1919 to pay for the street improvement work of that year. The second proposal was to take certificates to enable the city "to construct a large amount of paving." By the terms of the first proposal, the bonds were to be delivered not later than December 31, 1919. By the terms of the second, defendants' obligation continued until November 1, 1920, and it was stipulated that "all paving work of the city will be done under this agreement," the cost thereof not to exceed $400,000. The phrase "all paving work" is broader than the phrase "street improvement work you may do in the year 1919." If the second proposal was limited to certificates issued to pay for work done in 1919, why provide that the obligation to take them continued until November 1,

1920? It is only reasonable to suppose that the city had to pay for work done in 1919 long before November 1, 1920. A fair construction of the language of the two proposals leads to the conclusion that the second enlarged the scope of the first and was intended to include work done and certificates issued during the years 1919 and 1920.

4. Defendants proposed to take certificates issued under chapter 65, specifying that equal amounts should mature in each year "from 2 to 10 * * * or to 20 years." The law provides that the certificates shall be payable in annual instalments over a period not exceeding 20 years. The contention that the certificates required by the proposal could not be delivered without transgressing this provision cannot be sustained. There is nothing in the statute requiring the first instalment of the indebtedness to be paid in one year. But, this aside, defendants' proposal was to take certificates issued under the statute, that is, as authorized by the statute, and they cannot now be heard to say that their offer was meaningless because the city could not legally issue any certificates in the manner specified.

5. The second proposal gave the city "the choice of two arrangements," specifying each. It is contended that the complaint is defective because it does not state which of the proposed arrangements was accepted. The proposal was accepted in its entirety. Not until the time came to issue the certificates would the city have to make its choice between the alternative arrangements offered for its acceptance. Defendants have refused to perform in either manner. Such refusal gave rise to the cause of action now asserted.

6. There is no merit in the contention that the city is demanding that defendants take certificates aggregating $483,000, whereas the contract did not obligate them to take more than $400,000 in amount. The complaint alleged that defendants refused to take any certificates after the first two issues. Damages occasioned by the refusal to take an additional amount, not exceeding $215,000, may be recovered if there was a breach of a valid contract.

7. We are not now concerned with the proper rule of damages. A complaint is not demurrable because it pleads damages which

may not be recoverable. A demurrer should be overruled if, on any view of the facts pleaded, a cause of action is stated. First Nat. Bank of Hastings v. Corporation Sec. Co. 120 Minn. 105, 139 N. W. 296. Other suggested defects in the complaint are not of sufficient importance to require discussion.

Order affirmed.