# DAVID H. WELSH v. BARNES-DULUTH SHIPBUILDING COMPANY.[1]

November 30, 1945.

No. 34,064.

[1]Reported in 21 N. W. (2d) 43.

*J. H. Whitely,* for appellant.
*Hunt, Palmer & Hood,* for respondent.

PETERSON, JUSTICE.

Plaintiff sues to recover $1,650. The complaint is in the form of a common *indebitatus assumpsit* count for money had and received. The defense was that the money claimed represented an unpaid contingent salary increase granted by defendant to plaintiff as its employe, which it carried on its books as a contingent or reserve credit in his favor, and that plaintiff in consideration of future employment released and discharged defendant from liability and assigned and transferred the credit to it. The reply denied the release and discharge and alleged that plaintiff assigned and transferred to defendant "the said back-salary claim of $1650.00, without any consideration, except and only, upon the express condition and parole [parol] promise of the defendant that the said debt would be paid to him later, and within a reasonable time * * *."

Plaintiff's testimony shows that he had been employed by defendant as superintendent of its shipbuilding yard in Duluth at a salary of $290 per week, which on May 13, 1942, was increased to $400. After the increase had been granted, plaintiff was paid $290 per week less an authorized deduction of $18.75, or $271.25 net in cash, the same as before the increase was granted, and was given a contingent or reserve credit on defendant's books of $110 per week for the amount of the increase.

On cross-examination plaintiff testified that he and six other employes executed and delivered to defendant an instrument in writing dated August 25, 1942, which it claims discharged it from all liability for the promised salary increase. The document recites that an arrangement had been made for certain salary increases; that said increases were to become payable only at such future time

as defendant "should have fully discharged all of its obligations under a certain $135,000.00 note" held by a certain bank, which the evidence showed was given to secure loans made to provide working capital; that defendant had advised the employes in question that, owing to the state of its finances, it was impossible to continue to employ them on the basis of the contingent salary increases, or otherwise, except upon such terms as may be agreed upon by them and the management; and that the employes mentioned desired to continue to be employed by defendant. Following these recitals is a provision which reads:

"Now, Therefore, in consideration of such continued employment, for no stated period, but only for so long as their respective services shall be satisfactory to and desired by the corporation's Executive Vice-President and General Manager, they and each of them, do hereby forever release and discharge Barnes-Duluth Shipbuilding Company, and all of its officers and agents, from any and all of said contingent increases in salary, and assign and transfer to Barnes-Duluth Shipbuilding Company any and all reserves, accounts and credits set up on its books in their favor with respect to such contingent increases in salary."

Although plaintiff and six other employes signed the document, defendant did not.

After the execution of the writing, plaintiff continued in defendant's employment for a period of over four more weeks, or until September 26, 1942, during which his salary was paid in the manner stated. The $1,650 sued for represents 15 book credits of $110 in favor of plaintiff for each week he worked from May 13, the date of his first salary raise.

After the reception of evidence showing the facts stated, plaintiff rested. Thereupon defendant was permitted without objection to rest provisionally for the purpose of moving for a directed verdict. After the motion was made, plaintiff obtained leave to reopen for the purpose of offering further testimony. Thereupon plaintiff and two other employes testified that after the writing was

signed and delivered Julius H. Barnes, who had been president of defendant, "shook it until the ink was dry" and at the same time stated that the contingent increases would be taken care of later. The language attributed to Mr. Barnes was that "they would see I got it later," "You will get it later," and "this will be taken care of later." Mr. Barnes was also called as a witness. He testified that in 1944 the $135,000 note had been paid by defendant. Thereupon plaintiff finally rested.

Defendant then moved to strike out all testimony to the effect that defendant later would pay the contingent salary increases. Before the court ruled on the motion to strike, plaintiff asked leave to amend the reply so as to allege that defendant both *before* and *after* the release was signed promised to pay the amounts in question. Leave to amend was denied. The motion to strike the parol evidence relative to the agreement after the document was signed was granted upon the ground that the evidence in question was not within the issues made by the pleadings. Plaintiff then moved for a dismissal of the action. The court denied plaintiff's motion to dismiss and granted defendant's motion for a directed verdict. No exception was taken to any of the court's rulings. Pursuant to the court's direction, the jury returned a verdict in favor of defendant.

After the trial, plaintiff made a motion in the alternative for judgment notwithstanding the verdict or for a new trial upon the grounds that the verdict was not justified by the evidence and was contrary to law and that a verdict should have been rendered for plaintiff. No errors of law occurring on the trial were assigned in the motion for a new trial.

On appeal, plaintiff assigns as error the rulings: (1) Denying leave to amend the reply; (2) striking the testimony to the effect that after the document of release and assignment had been signed and executed defendant in effect promised to pay the contingent salary increases; (3) denying plaintiff's motion to dismiss; (4) permitting defendant to rest provisionally for the purpose of moving for a directed verdict; (5) granting defendant's motion for a

directed verdict; and (6) holding that the document of release and assignment constituted a defense to plaintiff's cause of action. The last-mentioned assignment of error is based upon the contentions that the instrument of release and assignment is not a valid contract because it was not signed by defendant, and that it lacks consideration and mutuality.

Our first duty is to determine what questions the appeal brings up for review. On appeal from an order denying a motion in the alternative for judgment notwithstanding the verdict or for a new trial, the propriety of denying the motion and errors of law preserved below for review on appeal may be assigned as error. Here, the propriety of denying plaintiff's motion for judgment is properly assigned as error. That assignment raises the question whether the evidence as a matter of law compels a recovery in favor of plaintiff. A new trial may be granted for errors of law occurring on the trial only where such errors are either excepted to at the time or clearly assigned in the notice of motion for a new trial. Minn. St. 1941, § 547.01(6), (Mason St. 1940 Supp. § 9325[6]). In Farris v. Koplau, 113 Minn. 397, 129 N. W. 770, we held that the court is without authority to grant a new trial because of errors of law occurring at the trial unless the errors were excepted to at the time or clearly assigned in the notice of motion for a new trial. Hence, assignments of error involving rulings made on the trial which were not excepted to or assigned as error in the notice of motion for a new trial cannot be considered. Porter v. Grennan Bakeries, Inc. 219 Minn. 14, 16 N. W. (2d) 906; Underwood v. Town Board of Empire, 217 Minn. 385, 14 N. W. (2d) 459; 1 Dunnell, Dig. § 395; 5 Id. Dig. and Supp. § 7091. Where the appeal is from the judgment, see Wendelsdorf v. County of Martin, 220 Minn. 614, 20 N. W. (2d) 528. Of the errors assigned here, the following relate to alleged errors of law occurring at the trial: (a) The denial on the trial of the motion for leave to amend the reply, Paull v. Columbian Nat. F. Ins. Co. 171 Minn. 118, 213 N. W. 539; (b) striking the evidence relative to the promise to pay the contingent salary increases given after the document of release and

assignment had been signed, Stitt v. Rat Portage Lbr. Co. 98 Minn. 52, 107 N. W. 824 (*Id.* 101 Minn. 93, 111 N. W. 948; 102 Minn. 337, 113 N. W. 901; 104 Minn. 347, 116 N. W. 643); Cady v. Cady, 91 Minn. 137, 97 N. W. 580; Olson v. Berg, 87 Minn. 277, 91 N. W. 1103; (c) denying plaintiff leave to dismiss, 5 Dunnell, Dig. § 7162; and (d) granting defendant leave to rest provisionally for the purpose of moving for a directed verdict, Porter v. Grennan Bakeries, Inc. 219 Minn. 14, 16 N. W. (2d) 906; Universal Co. v. Reel Mop Corp. 212 Minn. 473, 4 N. W. (2d) 86; Kelly v. McKeown, 139 Minn. 285, 166 N. W. 329. Because no exception was taken at the time to any of these rulings and because none of the rulings were assigned as error in the notice of motion for a new trial, none of them can be reviewed on this appeal. That leaves for our consideration the other assignments relating to the sufficiency of the evidence to compel a recovery in favor of plaintiff.

We have noticed the provision of L. 1945, c. 282, § 1, subd. 2,[2] to the effect that every ruling shall be deemed excepted to. At the time of the trial a new trial could be granted, as we pointed out, only where alleged errors were excepted to at the time or assigned in the notice of motion for a new trial. Even if the rulings on the trial here complained of were deemed excepted to, the question would still remain whether the statute has any application where, as here, the errors assigned on appeal were not assigned in the notice of motion for a new trial. It will be time enough to decide that question and others concerning the validity, scope, and meaning of the statute when a case arises squarely raising and presenting them. For present purposes, it is sufficient to hold that the statute has no application here, because it was enacted subsequent to the trial. The instant case is governed by the rules in force at the time of trial and not by those enacted afterward by the 1945 statute, for the reasons that the statute manifests no legislative intent that it should operate retroactively and that the rule of con-

---

[2]The statute reads: "In the trial of any civil or criminal case any adverse ruling, order, decision or instruction of the court on a matter of law shall be deemed excepted to for all purposes of this chapter."

struction in such cases is that "no law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." Minn. St. 1941, § 645.21 (Mason St. 1944 Supp. § 10933-22). The 1945 statute should be construed as prospective in operation. No case decided by us subsequent to the enactment of the statute, including the recent one of Wendelsdorf v. County of Martin, 220 Minn. 614, 20 N. W. (2d) 528, *supra,* involved the construction or application of the statute.

■ In determining whether the evidence compels a recovery in favor of plaintiff, the stricken evidence, to the effect that defendant after the document of release and assignment was executed promised to pay the contingent salary increases, cannot be considered. Not only is any question of error with respect to the ruling striking the evidence out of the case for the reasons already stated, but so also is any question whether the stricken evidence, either alone or in connection with the other evidence, sustains a right of recovery. Evidence ordered stricken is not in the case for any purpose. Zakrzewski v. G. N. Ry. Co. 131 Minn. 175, 154 N. W. 966. In that posture of the case, the only question is whether the release and assignment is a defense to plaintiff's claim, and that in turn depends on whether it is valid as against the objections urged against it.

■ The release and assignment was not invalid as a contract because of the fact that defendant had not signed it. A contract may be binding on a party even though not signed by him. The purpose of a signature is to show assent or mutuality. 17 C. J. S., Contracts, § 62a. These may be shown in other ways than by a signature. Where a signature is not required by some positive rule of law, as, for example, in certain cases by the statute of frauds, assent or mutuality may be shown by the fact that the parties accepted the writing as a binding contract and acted on it as such, even though it was not signed. Griffen v. Bristle, 39 Minn. 456, 40 N. W. 523. In Magoon v. Minnesota T. P. Co. 34 Minn. 434, 26 N. W. 235, we so held where an employe sued on a written contract of employment not signed by him. The principle is illustrated by the cases arising under the statute of frauds requiring the con-

tract to be signed by the party or parties to be charged therewith. In such cases, the party not to be charged therewith is bound by the contract if he accepts the contract and acts upon it as a binding one, even though he did not sign it. Krohn v. Dustin, 142 Minn. 304, 172 N. W. 213; Wemple v. Knopf, 15 Minn. 355 (440), 2 Am. R. 147; 37 C.J.S., Statute of Frauds, § 206; 49 Am. Jur., Statute of Frauds, § 384.

■ The questions whether the release and assignment lacked consideration and mutuality may be and should be considered together, because, after all, as we shall presently show, they involve but different phases of the question of consideration. Of course a consideration is essential to the validity of an executory contract. William Weisman Realty Co. v. Cohen, 157 Minn. 161, 195 N. W. 898. Where one promise is exchanged for another as the consideration for a bilateral contract, it is said that there must be mutuality. That means that there must be reciprocity of obligation; that is, that each party should receive from the other an enforceable promise for the one he gave in exchange. An unenforceable promise is really no promise at all, but an illusory one. Unless a promise is enforceable, the promisee receives nothing for his promise, and therefore it is without consideration. See, Corbin, "Non-Binding Promises as Consideration," 26 Columbia L. Rev. 550. In other words, both exchanged promises must be binding or neither is. In the final analysis, want of mutuality simply means want of consideration. Ellsworth v. Southern Minn. Ry. E. Co. 31 Minn. 543, 18 N. W. 822; Koehler & Hinrichs Merc. Co. v. Illinois Glass Co. 143 Minn. 344, 173 N. W. 703; Topken, Loring & Schwartz, Inc. v. Schwartz, 249 N. Y. 206, 163 N. E. 735, 66 A. L. R. 1179; 2 Dunnell, Dig. & Supp. § 1758. See, Thorpe Bros. v. Woodward, 192 Minn. 432, 256 N. W. 729.

While it is true that a consideration is necessary to the validity of an executory contract, the rule has no application to executed contracts, for the reason that performance, either partial or in full, supplies a sufficient consideration to support all its provisions. Brack v. Brack, 218 Minn. 503, 16 N. W. (2d) 557; City of Marshall

v. Kalman, 153 Minn. 320, 190 N. W. 597; C. S. Brackett Co. v. Lofgren, 140 Minn. 52, 167 N. W. 274, L. R. A. 1918F, 998; 2 Dunnell, Dig. & Supp. § 1752. See, Bowen v. Willard, 203 Minn. 289, 281 N. W. 256. The rule with respect to mutuality is the same. First Nat. Bank v. Corporation Sec. Co. 128 Minn. 341, 150 N. W. 1084; Stauff v. Bingenheimer, 94 Minn. 309, 102 N. W. 694; Oconto Brg. Co. v. Cayouette, 138 Wis. 664, 120 N. W. 497. In cases of executed contracts, mutuality, lacking while the contract was executory, or, as it is said, at its inception, is supplied by the promisee's subsequent performance. As a consequence of the promisee's performance, the contract is made binding on the promisor. As said in Storm v. United States, 94 U. S. 76, 83, 24 L. ed. 42, 45:

"Where the defendant has actually received the consideration of a written agreement, it is no answer to an action brought against him for a breach of his covenants in the same to say, that the agreement did not bind the plaintiff to perform the promises on his part therein contained, provided it appears that the promises in question have, in fact, been performed in good faith, and without prejudice to the defendant."

The contention here is that the release and assignment lacked both consideration and mutuality because defendant did not bind itself to employ plaintiff at all. Defendant's promise was to employ plaintiff, but for no stated period. That is precisely what defendant did by employing plaintiff for over four weeks after the execution of the release and assignment. Plaintiff, as a result of such employment by defendant, actually received the consideration for which he bargained, and, because of that fact, cannot complain that the release and assignment lacked either consideration or mutuality at its inception. Smith v. St. Paul & Duluth R. Co. 60 Minn. 330, 62 N. W. 392. We observe that plaintiff does not claim that defendant by a breach of contract terminated the employment. We do not deem it necessary to consider the further question whether under the rule of Rye v. Phillips, 203 Minn. 567, 282 N. W. 459, 119 A. L. R. 1120, plaintiff could release the reserves or unpaid salary increases without any consideration.

Since the objections to the contract are unavailing, it must be given effect according to its terms. Accordingly, we hold that it operated to transfer to defendant whatever rights plaintiff had in the reserves set up by defendant to cover the contingent salary increases and to release defendant from liability for either the reserves or the unpaid salary increases.

Affirmed.

