The ESTATE OF Charles
Francis PETERSON.

No. C5–97–1783.

Court of Appeals of Minnesota.

June 10, 1998.

Review Denied Aug. 18, 1998.

Lawrence D. Olson, Timothy D. Lees, Lawrence D. Olson & Associates, P.A., St. Paul, for appellant Diane H. Swanberg.

Robert B. Varco, Berglund & Varco, Ltd., Anoka, for respondent The Estate of Charles Francis Peterson.

Considered and decided by PETERSON, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

PETERSON, Judge.

Appellant challenges the trial court's denial of her petition for allowance of claim previously denied. Appellant argues that documents signed by her and decedent are enforceable contracts and, alternatively, that the documents are valid wills. We affirm.

## FACTS

Appellant Diane H. Swanberg met decedent Charles Francis Peterson in 1985. When they met, both Swanberg and Peterson were married to other individuals. In 1987, Swanberg left her husband and moved in with Peterson, who had separated from his wife. Peterson was divorced in late December 1987, and Swanberg was divorced in January 1989.

On September 21, 1988, Swanberg and Peterson signed two documents in the presence of a notary public. The language in the documents was dictated by Peterson and written by Swanberg. One of the documents was written on September 19, 1988, and the other was written on September 20, 1988. The documents contain essentially identical language, with one exception. The document written on September 19 states that it is an agreement while the September 20 document states that it is a contract. The September 20 document reads:

Sept. 20, 1988

This is a contract made between Charles Francis Peterson & Diane Helen Swanberg for the purpose of protection for Diane Swanberg in the event of death or disability of Charles Peterson

Diane would be entitled to all the equity in the home and furnishings at 1131 Chelsea Court New Brighton Minn 55112

Money in Chuck's savings & checking accounts.

Motor home.

4 lots

pick up 76 Chevrolet

Sept 21, 1988

/s/ Diane H. Swanberg

/s/ Charles F. Peterson

Signed this date—9–21–88—before me a notary public for Anoka County, MN.

/s/ Audrey J. Hilton

Swanberg and Peterson lived together in the home at 1131 Chelsea Court until Peterson's death on May 29, 1996. It is undisputed that the couple lived together in contemplation of sexual relations and never married.

Swanberg served a written claim on the personal representative of Peterson's estate claiming that she was entitled to (1) the equity and furnishings in the home at 1131 Chelsea Court; (2) the money in Peterson's checking, savings, money market, IRA, and 401(k) accounts; (3) a Dodge motor home; (4) a 1976 Chevrolet pickup truck; and (5) the money owed to Peterson from the buyout of his business. The personal representative disallowed Swanberg's claim, and Swanberg filed a petition for allowance of a claim previously disallowed.

At trial, Swanberg testified that Peterson promised to take care of her and give her everything that he owned if she would divorce her husband. Swanberg further testified that she believed that the documents signed on September 21, 1988, were legal contracts that bound Peterson to provide for her in the event of his death or disability.

The trial court denied Swanberg's petition. The court found that the documents signed on September 21, 1988, were merely statements by Peterson expressing an intent to

make a future gift to Swanberg and that the documents did not comply with the written contract requirement in Minn.Stat. § 513.075(1) (1996). The court concluded that the documents were not valid written contracts because they did not recite the consideration and mutuality of promises or contain a clear and concise description of the relationship of the parties and the property to be conveyed.

## ISSUES

1. Do the documents signed on September 21, 1988, comply with the written contract requirement in Minn.Stat. § 513.075(1) (1996)?

2. Are the documents signed on September 21, 1988, valid testamentary instruments?

## ANALYSIS

Where there is no dispute over relevant facts, the existence of a contract is solely a question of law to be determined by the court. *Triple B & G, Inc. v. City of Fairmont,* 494 N.W.2d 49, 53 (Minn.App. 1992). An appellate court reviews a trial court's resolution of legal issues de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984).

1. Swanberg argues that the documents signed on September 21, 1988, are contracts between her and Peterson that comply with the provisions of Minn.Stat. § 513.075 (1996).

Minn.Stat. § 513.075 provides:

If sexual relations between the parties are contemplated, a contract between a man and a woman who are living together in this state out of wedlock, or who are about to commence living together in this state out of wedlock, is enforceable as to terms concerning the property and financial relations of the parties only if:

(1) the contract is written and signed by the parties, and

(2) enforcement is sought after termination of the relationship.

Minn.Stat. § 513.076 (1996) provides:

Unless the individuals have executed a contract complying with the provisions of section 513.075, the courts of this state are without jurisdiction to hear and shall dismiss as contrary to public policy any claim by an individual to the earnings or property of another individual if the claim is based on the fact that the individuals lived together in contemplation of sexual relations and out of wedlock within or without this state.

It is undisputed that Swanberg's claim is a claim to Peterson's property. Swanberg does not contend that she has any present ownership interest in the property she is claiming. It is also undisputed that Swanberg's claim is based on the fact that she and Peterson lived together in contemplation of sexual relations and out of wedlock. Swanberg contends that the contemplation of sexual relations is the consideration for the contract.

Because Swanberg's claim is a claim to Peterson's property that is based on the fact that she and Peterson lived together out of wedlock in contemplation of sexual relations, Minn.Stat. § 513.076 required the trial court to dismiss her claim as contrary to public policy unless she and Peterson had executed a contract that complied with the provisions of Minn.Stat. § 513.075. *See* Minn.Stat. § 645.44, subd. 16 (1996) ("shall" is mandatory).

To comply with the provisions of Minn. Stat. § 513.075, a contract must be written and signed by the parties, and enforcement must be sought after termination of the relationship between the parties to the contract. It is undisputed that the parties signed the purported contract and that enforcement was sought after the relationship between the parties to the purported contract ended. The only issue regarding compliance with section 513.075 is whether either of the documents signed on September 21, 1988, is a written contract. We conclude that neither document complies with the statute.

A contract must be supported by consideration. Consideration is something of value given in return for a performance or promise of performance that is bargained for; consideration is what distinguishes a contract from a gift.

*Deli v. Hasselmo,* 542 N.W.2d 649, 656 (Minn.App.1996) (citation omitted), *review denied* (Minn. Apr. 16, 1996).

Swanberg concedes that the documents do not express the consideration that is necessary to form a contract, but, quoting *Julius Kessler & Co. v. Parelius,* 107 Minn. 224, 226, 119 N.W. 1069, 1070 (1909), she argues that "[p]arol evidence is always admissible to show the actual consideration of a contract." *Parelius,* however, did not involve a contract that was required, by statute, to be in writing.

In *Greer v. Kooiker,* 312 Minn. 499, 253 N.W.2d 133, 138 (1977), the supreme court considered whether a memorandum that expressed the terms of a contract to purchase land was sufficient to comply with a statutory requirement that the contract be in writing. The court noted that one of the rules of construction to be applied in evaluating the writing was that "parol evidence is admissible to explain (but not to contradict or to supply) a term of the memorandum." *Id.* The writing in *Greer* contained the number "482.08," which was the number of acres of land to be sold, and the figure "$157,500," which was the sale price, but did not indicate the meaning of these figures. *Id.* 312 Minn. 499, 253 N.W.2d at 136–37, 139. There was no doubt between the parties as to the meaning of the 482.08 entry on the document, and the parties agreed at trial that the $157,500 figure represented the consideration. *Id.* 312 Minn. 499, 253 N.W.2d at 139. Under these circumstances, parol evidence was admitted to dispel any ambiguities in the document. *Id.*

Unlike in *Greer,* the documents signed on September 21, 1988, contain no language that can be construed as expressing the consideration that supports the contract. Swanberg offered extrinsic evidence to supply an essential element of the contract that is completely absent from the writing, not to explain an ambiguity present in either of the documents.

In *Taylor v. Allen,* 40 Minn. 433, 433, 42 N.W. 292, 292 (1889), the supreme court considered whether the written memorandum of a contract for the sale of land was sufficient to satisfy the requirements of the statute of frauds. The memorandum contained no description of the land that was the subject matter of the contract. *Id.* There was an attempt to supply the description through testimony at trial. *Id.* The supreme court stated:

> Evidence of extrinsic facts and circumstances are admissible to apply or identify a description contained in the memorandum, but the attempt here was to supplement a manifestly incomplete memorandum by proving the description by parol. Oral evidence can no more supply defects in the written memorandum that it can supply the entire want of one. The writing must be complete in itself by containing all the essential elements of the contract, including a description of its subject-matter.

*Id.* at 433–34, 42 N.W. 292.

As stated in *Taylor,* the requirement that a writing must be complete in itself to comply with the statute of frauds applies to all essential elements of a contract. Consideration is an essential element of a contract. *Deli,* 542 N.W.2d at 656. Swanberg has not cited any authority that permits consideration to be shown solely by extrinsic evidence where a contract must be written to be enforceable. When a contract is required to be in writing, extrinsic evidence is admissible to explain, but not to supply a contract term. *Greer,* 253 N.W.2d at 138. We conclude that the documents signed on September 21, 1988, do not comply with the provisions of Minn.Stat. § 513.075 because they contain no expression of consideration to support the purported contract, and, therefore, do not contain all the essential elements of the contract. Extrinsic evidence was not admissible to supply an essential element of the contract.

Swanberg argues that the conclusion that the written documents do not constitute a contract because they do not express the consideration that supports the contract "wholly misses the nature of [Minn.Stat. §§ 513.075–.076]" because the statutes themselves define the consideration. We disagree.

Consideration requires that a contractual promise be the product of a bargain.

However, in this usage, "bargain" does not mean an exchange of things of equivalent, or any, value. It means a negotiation resulting in the voluntary assumption of an obligation by one party upon condition of an act or forbearance by the other. Consideration thus insures that the promise enforced as a contract is not accidental, casual, or gratuitous, but has been uttered intentionally as the result of some deliberation, manifested by reciprocal bargaining or negotiation. In this view, the requirement of consideration is no mere technicality, historical anachronism, or arbitrary formality. It is an attempt to be as reasonable as we can in deciding which promises constitute contracts.

*Baehr v. Penn–O–Tex Oil Corp.*, 258 Minn. 533, 538–39, 104 N.W.2d 661, 665 (1960) (footnote omitted).

The statutes do not make the contemplation of sexual relations the consideration for any contract. The consideration for a contract is determined by negotiations between the parties to the contract. The contemplation of sexual relations cannot be the consideration for a contract if the parties did not voluntarily agree that it would be consideration.

Minn.Stat. §§ 513.075–.076 simply provide that a man and woman do not acquire cognizable claims to the earnings or property of the other by simply living together out of wedlock in contemplation of sexual relations. In these circumstances, if either asserts a claim based on their living arrangements, the courts of this state have no jurisdiction to hear the claim if the man and woman have not executed a written contract concerning their property or financial relations.

The trial court properly concluded that because the documents signed on September 21, 1988, do not state any consideration, neither document is a written contract that complies with the provisions of Minn.Stat. § 513.075.

2. Swanberg argues in the alternative that the documents are valid wills. This issue was not properly before the trial court. The probate court issued an order of formal adjudication of intestacy under Minn.Stat. § 524.3–409 (1996) and directed an unsupervised administration of Peterson's estate. Swanberg asserted her claim against the estate, and the documents were admitted as evidence to support her claim. There was no proceeding under Minn.Stat. §§ 524.3–301, .3–402 (1996) to admit either document to probate as Peterson's will. The trial court had no authority to treat either document as a valid will. *See In re Stenzel's Estate*, 210 Minn. 509, 299 N.W. 2 (1941) ("Where statutes authorize a procedure for the probate of wills, a will cannot be probated in proceedings for administration. A will can be admitted to probate only in proceedings for that purpose and by giving the notice required by the statutes under which the same are taken.").

## DECISION

Because the documents signed on September 21, 1988, do not state any consideration, neither document is a written contract that complies with the provisions of Minn.Stat. § 513.075. Because neither of the documents signed on September 21, 1988, had been admitted to probate as Peterson's will, the trial court had no authority to treat either document as a will.

**Affirmed.**

LANSING, Judge (dissenting).

The majority holds that the documents signed by Diane Swanberg and Charles Peterson are not enforceable because they do not state in writing the consideration for the contract. For three separate reasons, I believe that this holding is not supported by the applicable law, and I respectfully dissent.

First, Minn.Stat. § 513.075, governing financial and property agreements between cohabiting parties, does not require that the consideration be stated in writing. *See* Minn.Stat. § 513.075 (requiring only that cohabitation agreements be in writing, signed by parties, and enforced after termination of relationship). Imposing an additional requirement, not listed in the statute, is inconsistent with principles of statutory construction and with the apparent purpose of the statute. *See Wallace v. Commissioner of*

*Taxation,* 289 Minn. 220, 230, 184 N.W.2d 588, 594 (1971) (courts "cannot supply that which the legislature purposely omits or inadvertently overlooks"); *In re Eriksen,* 337 N.W.2d 671, 674 (Minn.1983) (Minn.Stat. § 513.075 applies "only where the *sole* consideration for a contract between cohabiting parties is their 'contemplation of sexual relations * * * out of wedlock' ").

The cases cited by the majority in support of imposing a written consideration requirement were not decided under the cohabitation provision of section 513.075, and both involve contracts for the sale of lands. *See Greer v. Kooiker,* 312 Minn. 499, 504–07, 253 N.W.2d 133, 138–39 (1977) (contract for sale of land under Minn.Stat. § 513.05); *Taylor v. Allen,* 40 Minn. 433, 434, 42 N.W. 292, 292 (1889) (contract for sale of land under statute of frauds). Contracts for the sale of lands are governed by a parallel provision, Minn. Stat. § 513.05, which specifically requires that consideration be stated in writing. Minn.Stat. § 513.05 (1996) (contract for sale of land void unless, among other requirements, consideration stated in writing). Consequently, these cases do not provide precedent for the issues raised in this case.

Second, implying a stringent written consideration requirement into the contract between Swanberg and Peterson runs counter to well established common law rules of contract interpretation, some of which apply even when the transactions involve the sale of land. *See Greer,* 312 Minn. at 505, 253 N.W.2d at 138–39 ('part performance may, in some instances, place the transaction wholly outside the statute') (quoting *Doyle v. Wohlrabe,* 243 Minn. 107, 110, 66 N.W.2d 757, 761 (1954)); *Donnay v. Boulware,* 275 Minn. 37, 44, 144 N.W.2d 711, 716 (1966) (where writing is ambiguous, court may look to extrinsic evidence "and construction then becomes a question of fact unless such evidence is conclusive"); *see also Hartung v. Billmeier,* 243 Minn. 148, 151, 66 N.W.2d 784, 788 (1954) (indefiniteness should not be invoked to invalidate a writing that reasonably expresses intent of parties).

Furthermore, a written consideration requirement undermines the general principle that when a contract does not state the con-

sideration on its face, the party relying on the contract may prove it through extrinsic evidence. *See* Restatement (Second) of Contracts, § 218 cmt. d (1981) (because written agreement that fails to state consideration is not fully integrated, parol evidence rule does not apply and "evidence is admissible to show that there was consideration and what it was"); John D. Calamari and Joseph M. Perillo, Contracts, § 4–24, at 175 (2nd ed.1977) (extrinsic evidence admissible to show consideration exists where no consideration is stated on one or both sides of written contract because a "writing which does not on its face appear to be supported by consideration is not a total integration."). *See also Bartl v. Kenyon,* 549 N.W.2d 381, 383 (Minn. App.) ("[w]here no consideration is apparent on the face of the agreement, the party relying on it must prove consideration"), *overruled on other grounds,* 552 N.W.2d 730, 730 (Minn.1996).

Third, Minnesota courts have long recognized that a fully performed contract is valid, even if there is no consideration for it. *In re Alms' Estate,* 153 Minn. 256, 259, 190 N.W. 253, 254 (1922). *See also City of Marshall v. Kalman,* 153 Minn. 320, 326, 190 N.W. 597, 600 (1922) ("the absolute and executed part of a contract is a sufficient consideration to support all the provisions of the contract."). Swanberg and Peterson lived together for over eight years. In apparent reliance on their agreement, Swanberg entered into the cohabiting relationship and forfeited spousal maintenance from her previous marriage. The evidence demonstrates a long-lasting domestic relationship that included Swanberg's considerable sacrifice in caring for Peterson during a lengthy and debilitating final illness. It is undisputed that the agreement was executed. Recognizing the validity of an executed contract goes to the very essence of consideration, which "means, not so much that one party is benefited, as that the other suffers detriment." *Johnson v. Kruse,* 205 Minn. 237, 241, 285 N.W. 715, 717 (1939), *overruled in part on other grounds, Bennett v. Johnson,* 230 Minn. 404, 411, 42 N.W.2d 44, 49 (1950). In *Welsh v. Barnes–Duluth Shipbuilding Co.,* the Minnesota Supreme Court emphasized the significance of execut-

ed contracts whether or not consideration had been provided:

> While it is true that a consideration is necessary to the validity of an executory contract, the rule has no application to executed contracts, for the reason that performance, either partial or in full, supplies sufficient consideration to support all its provisions.

221 Minn. 37, 44, 21 N.W.2d 43, 47 (1945).

The basic purpose of statute-of-frauds requirements is only to provide reasonable safeguards to insure honest dealing, not "to make a fetish of requiring a perfect written contract." *Greer,* 312 Minn. at 505, 253 N.W.2d at 138 (quoting *Doyle,* 243 Minn. at 110, 66 N.W.2d at 761). Imposing a written consideration requirement is at variance with the applicable statute, common law contract principles, and the executed status of the contract. For these reasons, I cannot agree with the majority's holding.