**Rock E. KEEZER, Appellant,**

v.

**Dennis SPICKARD, et al., Respondents.**

**No. C3–92–1018.**

Court of Appeals of Minnesota.

Dec. 22, 1992.

Review Denied Feb. 12, 1993.

Neil Tangen, Tangen Law Office, Starbuck, for appellant.

Peter D. Bergstrom, Claire C. Olson, Ratwik, Roszak, Bergstrom & Maloney, Minneapolis, for respondents.

Considered and decided by AMUNDSON, P.J., and LANSING and PETERSON, JJ.

## OPINION

PETERSON, Judge.

Rock Keezer argues the trial court improperly granted summary judgment against his claims that respondents violated his rights under the Minnesota Government Data Practices Act and under 42 U.S.C. § 1983 (1988). We affirm.

## FACTS

Appellant Rock Keezer suffers from a mental illness and occasionally must be hospitalized for treatment. Keezer receives medical assistance from Mahnomen County. Mahnomen County Human Ser-

vices Department employee Anita Olson has been Keezer's caseworker for about two years.

On April 16, 1992, the Keezer family's community support person told Olson that the family needed help from the Sheriff's Department because Keezer was becoming aggressive. Olson called the sheriff's dispatcher who sent Dennis Spickard, the Mahnomen County Sheriff, to Olson's office. When Spickard arrived, Olson was in her office talking to two women.

Olson stepped outside her office to talk to Spickard but left the office door ajar. The two women inside Olson's office heard her ask Spickard to pick Keezer up because he was having a bad episode of his mental illness. Olson warned Spickard to be careful because she "knows Rock and what he's capable of." Spickard replied "I'm not worried about it; I put eight caps in my stun gun this morning; crazy or not, I'll shoot him." Then, Spickard snickered and left. When Olson returned to her office, the two women asked if she had been talking about Keezer. Olson tried to minimize Spickard's remarks, then said Spickard was going to pick up Keezer.

After picking up Keezer, Spickard stopped at the Wadena Convenience Store to use the restroom. At the store, a customer heard Spickard loudly tell the store owner, "We're taking Rock to Fergus Falls, I know you were all worried about him. Now you don't have to worry anymore." It is common knowledge in the area that a hospital for the mentally ill is located in Fergus Falls.

Keezer heard about Olson's and Spickard's comments through third parties. On January 30, 1992, Keezer filed a complaint in Mahnomen County District Court raising claims that respondents Spickard, Olson, and Mahnomen County had violated his rights under the Minnesota Government Data Practices Act and under 42 U.S.C. § 1983 (1988). Respondents filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted or, alternatively, for summary judgment. The trial court granted summary judgment for respondents. On appeal, Keezer argues the trial court improperly granted summary judgment for respondents because they violated his rights under the Minnesota Government Data Practices Act and under 42 U.S.C. § 1983 by releasing private government data about him without authorization.

## ISSUES

I. Did the trial court err in concluding the information released about Keezer was not protected under the Minnesota Government Data Practices Act?

II. Did the trial court err in concluding Keezer's rights under 42 U.S.C. § 1983 (1988) had not been violated?

## ANALYSIS

On appeal from a summary judgment, we must examine the record to determine whether any genuine issues of material fact exist and whether the trial court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). This court must view the evidence in the light most favorable to the nonmoving party. *Id.* However, construction of a statute is a question of law subject to de novo review. *Doe v. State Bd. of Medical Examiners*, 435 N.W.2d 45, 48 (Minn.1989). When the language of a statute is ambiguous, we must "determine the probable legislative intent and give the statute a construction that is consistent with that intent." *Tuma v. Commissioner of Economic Sec.*, 386 N.W.2d 702, 706 (Minn.1986).

### I.

■ The Minnesota Government Data Practices Act (Act) "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in state agencies, statewide systems, and political subdivisions." Minn.Stat. § 13.01, subd. 3 (Supp.1991). Under the Act, government data classified as private data on individuals may not be released without proper authorization. Minn.Stat. § 13.05, subd. 4 (1990). The basic issue in this case

is whether the statements made by Olson and Spickard improperly disclosed government data about Keezer in violation of the Act.

The threshold question we must answer is "Did the statements disclose government data?" Answering this question is difficult because the Act does not define the word "data." The Act defines "data on individuals" as

> all government data in which any individual is or can be identified as the subject of that data, unless the appearance of the name or other identifying data can be clearly demonstrated to be only incidental to the data and the data are not accessed by the name or other identifying data of any individual.

Minn.Stat. § 13.02, subd. 5 (1990) (emphasis added).

> "Government data" means all data collected, created, received, maintained or disseminated by any state agency, political subdivision, or statewide system regardless of its physical form, storage media or conditions of use.

Minn.Stat. § 13.02, subd. 7 (emphasis added). Although this definition includes all data "regardless of its physical form," it is silent on whether data must be in a physical form to be government data.

The failure to state whether data must be in a physical form to be government data creates an ambiguity in the Act because of the unique nature of data. The word "data" means information and can refer to information in any form. See Webster's Seventh New Collegiate Dictionary 210 (1972). To create data it is not necessary to write anything, enter anything into a computer, or make a record of any kind. Data exist when a person knows something.

If the Act is read literally, the term "government data" can include knowledge that exists only in the mind of a government employee. For example, if a government employee asks a license applicant a question for the purpose of filling out a license application form, it would not ·be necessary for the employee to fill in the form to create government data. Data

would exist as soon as the applicant responds to the question and the employee comprehends the answer. Because the employee stores the data in some physical form in the brain, the unrecorded information would be "government data" under a literal interpretation of the Act.

We cannot believe the legislature intended the term "government data," to be literally interpreted to include unrecorded data that exist only in a human brain. Interpreting "government data" to include mental impressions formed by public employees during the course of employment would lead to absurd results. See Minn.Stat. § 645.17(1) (1990) (court must presume legislature did not intend absurd result); Salmen v. City of St. Paul, 281 N.W.2d 355, 361 n. 8 (Minn.1979). For example, Minn. Stat. § 13.04, subd. 4 (1990) provides:

> (a) An individual subject of the data may contest the accuracy or completeness of public or private data. To exercise this right, an individual shall notify in writing the responsible authority describing the nature of the disagreement. The responsible authority shall within 30 days either: (1) correct the data found to be inaccurate or incomplete and attempt to notify past recipients of inaccurate or incomplete data, including recipients named by the individual; or (2) notify the individual that the authority believes the data to be correct. * * *
>
> *  *  *  *  *  *
>
> (b) Data on individuals that have been successfully challenged by an individual must be completed, corrected, or destroyed by a state agency, political subdivision, or statewide system.

If "government data" includes information existing only in the minds of government employees, and an individual subject of data successfully challenges the accuracy or completeness of a government employee's knowledge about the individual, it is difficult to imagine how a state agency, political subdivision, or statewide system would fulfill its duty to complete, correct, or destroy the inaccurate or incomplete data.

Also, Minn.Stat. § 13.05, subd. 1 provides:

> The responsible authority shall prepare a public document containing the authority's name, title and address, and a description of each category of record, file, or process relating to private or confidential data on individuals maintained by the authority's state agency, statewide system, or political subdivision. Forms used to collect private and confidential data shall be included in the public document.

The purpose of this requirement is to provide to the public a description of the types of private or confidential data that are under the control of a public authority. A public authority could not reasonably be expected to include in this document a description of the unrecorded mental impressions of government employees.

Finally, Minn.Stat. § 13.05, subd. 8 provides:

> The responsible authority shall prepare a public document setting forth in writing the rights of the data subject pursuant to section 13.04 and the specific procedures in effect in the state agency, statewide system or political subdivision for access by the data subject to public or private data on individuals.

If "government data" includes the unrecorded mental impressions of government employees, this statute requires responsible authorities to describe procedures for gaining access to these impressions. The statute cannot be reasonably interpreted to include such a requirement.

■ Having determined that "government data" is not intended to mean data in all forms the moment it comes into government possession, we must now decide when data become government data under the Act. To make this determination we must consider the purpose of the Act. *See Tuma*, 386 N.W.2d at 707 (to determine legislative intent, court may examine object of the law). The Act "regulates the collection, creation, storage, maintenance, dissemination, and access to government data." Minn.Stat. § 13.01, subd. 3. By referring separately to each function, this subdivision indicates the Act is intended to do more than simply regulate physical access to government records. The Act is intended to regulate every aspect of how the government manages the information it collects and records. It is nearly impossible to regulate any function related to data until a record is created somewhere outside the human brain. To give effect to the Act, we conclude that information is not "government data" until the information is recorded somewhere other than the human brain.

■ Under this definition of "government data", an individual has no cause of action under the Act for the unauthorized release of private data about him unless he shows the information released was recorded somewhere other than in the mind of a government employee. *See Johnson v. Dirkswager*, 315 N.W.2d 215, 222 (Minn. 1982) (court determined statements summarizing contents of letter were public government data by looking at letter and deciding information written there was public government data). A plaintiff must point to an actual record whose contents have been disseminated to give rise to a claim for improper release of government data under the Act. A plaintiff cannot establish the Act was violated merely by showing a government employee said something about him and that the statement contained information that arguably might be stored in a government record. If the information in the employee's statement was not actually recorded, then "government data" have not been created or released.

■ In the present case, Keezer has shown two county employees made statements about him. However, Keezer has not established the information in the statements was stored anywhere other than in Olson's and Spickard's minds. The comments at issue were careless, and even offensive. But, absent any showing that the information disseminated was recorded in some physical form other than in the human brain, Keezer has failed to show the employees released government data. Thus, Keezer had no cause of action under the Act and the trial court properly granted summary judgment for respondents.

II.

■ 42 U.S.C. § 1983 (1988) provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A constitutional claim or a violation of a statute can be the basis of a section 1983 action. *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980).

Keezer claims his constitutional right to privacy was violated by the unauthorized disclosure of information about him. Generally, the constitutional right to privacy has been limited to situations involving marriage, family, and reproductive matters. *See, e.g., Bowers v. Hardwick,* 478 U.S. 186, 190–91, 106 S.Ct. 2841, 2843–44, 92 L.Ed.2d 140 (1986); *Roe v. Wade,* 410 U.S. 113, 152–53, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). While recognizing an individual has some type of privacy interest in preventing the dissemination of personal data collected by the government, the Supreme Court never has extended the constitutional right of privacy to include the right to prevent the disclosure of personal information. *See Whalen v. Roe,* 429 U.S. 589, 605–06, 97 S.Ct. 869, 879, 51 L.Ed.2d 64 (1977) (Supreme Court declined to decide whether right to prevent release of information collected by government was part of constitutional right of privacy). Accordingly, the trial court properly held the release of personal data about Keezer could not have violated his constitutional right of privacy so as to give rise to a section 1983 claim.

■ Keezer also argues the violation of his rights under 42 U.S.C. 1396a(a)(7) (1988) gives rise to a section 1983 claim. 42 U.S.C. 1396a(a)(7) requires a state medical assistance plan to

provide safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with the administration of the plan.

Even if we assume this statute creates rights enforceable under section 1983, Keezer failed to show his rights were violated. The state plan for medical assistance in Minnesota complies with section 1396a(a)(7) because the Act provides safeguards that restrict the use or disclosure of information about medical assistance applicants and recipients. *See* Minn.Stat. § 13.-46, subd. 2 (Supp.1991) (government data collected by the welfare system are private data on individuals which shall not be disclosed except in limited circumstances). Finally, even if Keezer had raised the claim that the safeguards in the Act are inadequate, neither the county nor its employees are responsible for the state's failure to adopt an adequate plan. Because Keezer failed to show his rights under section 1396a(a)(7) were violated, the trial court properly found he had no viable section 1983 claim.

DECISION

The trial court properly granted summary judgment for respondents because Keezer failed to show the employees released government data in violation of the Minnesota Government Data Practices Act or violated his constitutional or statutory rights so as to give rise to a claim under 42 U.S.C. § 1983.

Affirmed.