**Quinn UNKE, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 147, DILWORTH, Minnesota, Respondent.**

No. C9–93–1261.

Court of Appeals of Minnesota.

Jan. 18, 1994.

Review Denied March 15, 1994.

Karin E. Peterson, Gregg Corwin & Associates, St. Louis Park, for appellant.

Steven J. Cahill, Cahill, Maring & Marquart, P.A., Moorhead, for respondent.

Considered and decided by KLAPHAKE, P.J., and PETERSON and HARTEN, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Quinn Unke (Unke) sued respondent Independent School District No. 147 (school district) for violation of the Minnesota Government Data Practices Act, Minn.Stat. ch. 13 (1990) (Data Practices Act) and the Minnesota Open Meeting Law, Minn. Stat. § 471.705 (1990) (Open Meeting Law). After cross-motions for summary judgment, the district court granted summary judgment to the school district. We reverse.

## FACTS

The school district employed Unke as a guidance counselor during the 1991–1992 school year. At that time, Unke's teaching contract afforded him the right to grieve disciplinary actions, including suspension and discharge, through arbitration.

In April 1992, a district student told the superintendent, Dennis Wahl, that Unke had sexually harassed her. District officials investigated the complaint, and on April 13, 1993, Wahl presented the charges against Unke to the school board in a closed meeting.

A week later, the school board convened a special open meeting to discuss the student's complaints against Unke. At the meeting, Wahl discussed the allegations against Unke, presenting supporting evidence. Wahl later read a resolution proposing that Unke be terminated immediately, which the school board passed. The next day, the *Fargo Forum* published an article, entitled "Dilworth Fires Counselor Over Sex Harassment Allegations," which identified Unke as being terminated for alleged sexual harassment of a student.

In late June, the student who accused Unke of sexual harassment decided not to testify at Unke's discipline hearing. Consequently, the school board rescinded Unke's termination and offered him a position as a physical education teacher.

Unke sued the school district for violating the Data Practices Act and the Open Meeting Law. The district court granted school district's summary judgment motion, and this appeal followed.

## ISSUES

I. Did the district court err by concluding the school district did not violate the Data Practices Act, Minn.Stat. ch. 13 (1990 & Supp.1991)?

II. Did the district court err by concluding the school district did not violate the Open Meeting Law, Minn.Stat. § 471.705 (1990)?

## ANALYSIS

### Standard of Review

On review of summary judgment, this court determines whether any genuine issues of material fact exist and whether district court erred in applying the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). "Interpretation of a statute is a question of law." *Driscoll v. Driscoll*, 414 N.W.2d 441, 445 (Minn.App.1987). A reviewing court does not defer to the district court's decision on a question of law. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.*, 260 N.W.2d 579, 582 (Minn. 1977).

### I.

This case presents the question of whether the school district violated the Data Practices Act by identifying Unke and the nature of the sexual harassment complaint against him during an open meeting that occurred before final disposition of his disciplinary action.

The Data Practices Act provides that all personnel data on public employees is private

unless otherwise specified in the statute. Minn.Stat. § 13.43, subd. 4 (1990). The following information is public:

> [T]he existence and status of any complaints or charges against the employee, whether or not the complaint or charge resulted in a disciplinary action; the final disposition of any disciplinary action together *with the specific reasons* for the action and *data documenting* the basis of the action, excluding data that would identify confidential sources who are employers of the public body.

Minn.Stat. § 13.43, subd. 2(a) (Supp.1991) (emphasis added).

Information that identifies the "existence and status" of a complaint against an employee is therefore public, regardless whether a disciplinary action results. After final disposition of a disciplinary action, the "specific reasons" for or "data documenting the basis of" the action is also public information. *Id.* The specific reasons for the action or data documenting its basis, however, remains private until final disposition of the disciplinary action. Final disposition in this case occurred at the conclusion of the arbitration proceeding. *See* Minn.Stat. § 13.43, subd. 2(b) (Supp.1991); *see also Annandale Advocate v. City of Annandale*, 435 N.W.2d 24, 28–29 (Minn.1989) (city council's decision to discharge veteran not final disposition until after Veterans' Preference Board hearing).

Because Unke's arbitration proceeding had not concluded at the time of the April school board meeting, any information identifying specific reasons for or data documenting the action against Unke was private data. At the meeting, Wahl released the following information: (a) that the alleged perpetrator was Unke; (b) that the student filed a sexual harassment claim against Unke; (c) that Wahl first interviewed the student and her mother and then talked to Unke; (d) that Wahl talked to two other students who ostensibly corroborated part of the student's story; (e) that the allegation was the first one made against Unke; (f) that Unke had the opportunity to provide exculpatory evidence but failed to do so; (g) that Wahl said an arbitrator would make the ultimate decision on Unke's discipline; and (h) that Wahl con-

cluded Unke had violated the school district's sexual harassment policy.

■ Unke argues that this information exceeds the scope of public data under Minn. Stat. § 13.43, subd. 2(a) (Supp.1991). We agree. The school district's release of the type and number of complaints, the existence of students who corroborated the allegations, and Unke's failure to rebut the allegations exceeds the scope of section 13.43. This information identifies specific reasons for and data documenting Unke's termination. We conclude the school district violated the Data Practices Act by elaborating on the nature of the charge against Unke and failing to restrict its release of information to the existence of a complaint. *See Demers v. City of Minneapolis*, 486 N.W.2d 828, 831 (Minn. App.1992) (public employee personnel data private unless designated as otherwise in Data Practices Act).

■ We also reject the two arguments put forth by the school district to support its position. First, the school district claims it did not make public either the student's written allegations or the precise statements from the student, her mother, or the other students. The Data Practices Act, however, prohibits the release of private data, regardless of how it is disseminated. *See Annandale*, 435 N.W.2d at 32.

■ Second, relying on *Keezer v. Spickard*, 493 N.W.2d 614 (Minn.App.1992), *pet. for rev. denied* (Minn. Feb. 12, 1993), the school district claims that Wahl's descriptions of Unke's conduct were "mental impressions" not governed by the Data Practices Act. In this case, unlike in *Keezer*, private information was recorded, a transcript of the meeting was made, and the *Fargo News* summarized the information. *Cf. Keezer*, 493 N.W.2d at 618 (no violation where data was not "recorded" or "stored" anywhere but in public employees' minds). Hence, Wahl's statements are not "mental impressions" and therefore are governed by the Data Practices Act.

We hold that the school district violated the Data Practices Act and remand for further proceedings to determine causation and damages. *See* Minn.Stat. § 13.08, subd. 1

(1990) (school district is liable for any damages sustained by person because of violation of the Data Practices Act, as well as up to $10,000 in exemplary damages for each violation).

## II.

Unke also argues the school district's conduct violated the Open Meeting Law. *See* Minn.Stat. § 471.705, subd. 2 (1990) (person who violates the Open Meeting Law is subject to a civil penalty not to exceed $100). We agree.

If a school board concludes that discipline against a teacher may be warranted, the Open Meeting Law requires the meeting to be open. Minn.Stat. § 471.705, subd. 1d(c) (1990). In *Annandale,* the supreme court required that such meetings be closed during discussion of private data. *Annandale,* 435 N.W.2d at 33. The court reasoned that both public policy and the legislature's intent to accord substantial privacy to personnel data favored excepting private data from the Open Meeting Law. *Id.* at 32–33 (unless Open Meeting Law is construed to require closure of meetings when private data is disseminated, its protections become "illusory"); *see McDevitt v. Tilson,* 453 N.W.2d 53, 56 (Minn. App.1990) (the Data Practices Act takes precedence over the Open Meeting Law to ensure that private data remains private), *pet. for rev. denied* (Minn. May 23, 1990). The court also noted that because openness in government is also a policy concern, a meeting should remain closed only during discussion of private material. *Annandale,* 435 N.W.2d at 33.

In this case, the school district failed to close the meeting when it discussed private data involving the nature of the charge against Unke. By failing to close the meeting during discussion of private data involving Unke, the school district violated the Open Meeting Law and we remand to the district court for trial.

## DECISION

The district court erred as a matter of law by concluding that the school district did not violate the Data Practices Act and the Open Meeting Law.

**Reversed and remanded.**