Katalin DELI, Appellant,

v.

Nils HASSELMO, in His Capacity as President of the University of Minnesota, et al., Respondents.

No. CX–95–1743.

Court of Appeals of Minnesota.

Jan. 30, 1996.

Robert E. Oliphant, St. Paul, for appellant.

Mark B. Rotenberg, General Counsel, Lorie Skjerven Gildea, Associate General Counsel, University of Minnesota, Minneapolis, for respondents.

Considered and decided by AMUNDSON, P.J., and KLAPHAKE and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Appellant Katalin Deli was discharged from her job as head coach of the women's gymnastics team at the University of Minnesota. Deli later sued respondent University and associated parties for, among other things: (1) violation of the Data Practices Act in making statements to the media concerning information in her personnel file; (2) breach of contract; and (3) unjust enrichment. The district court granted the University summary judgment, concluding that the statements were not data under the Data Practices Act, that there was no consideration for the contract, and that res judicata precluded the unjust enrichment claim. The district court also denied Deli's cross-motion for partial summary judgment on the contract claim and did not decide the issue of promissory estoppel. Deli appeals adverse summary judgment on the data practices,

contractual, and unjust enrichment claims. We reverse summary judgment and remand on the data practices claim, affirm summary judgment on the breach of contract and unjust enrichment claims, and remand for determination of the promissory estoppel claim.

## FACTS

Katalin Deli was head coach of the University of Minnesota women's gymnastics team from 1973 to 1992. Her husband, Gabor Deli, served as assistant coach from 1976 to 1992. From 1989 to 1991, the Delis allowed the team to use their private gymnastics facility at no cost to the University.

In January 1992, the gymnastics team competed in Florida. The coaches videotaped the team's performance using a videotape and equipment belonging to the University. Unknown to Katalin Deli, her husband also videotaped the couple having sexual relations in their motel room one evening during the team's stay in Florida.

After the team returned to Minnesota, one of the student athletes asked Gabor Deli if she could see the videotape of her performance. The student inadvertently discovered the unerased intimate sexual scenes on the videotape. Several other students also viewed the videotape; eventually, existence of the videotape became known beyond the circle of athletes. On March 2, 1992, Katalin Deli recovered possession of the videotape. Chris Voelz, women's athletic director for the University, then demanded that Deli give her the videotape in the same condition as it was when viewed by the students. After negotiation, Deli agreed to turn over the videotape and Voelz agreed not to view it. Nonetheless, at the direction of University authorities, Voelz later viewed the videotape.

The University conducted an investigation of Deli's performance as head coach. In February and March 1993, prior to the final disposition of the University's investigation, Voelz made statements to the media concerning the investigation. On April 12, 1993, the University discharged Deli, and, on appeal, this court upheld her termination. *Deli v. University of Minn.*, 511 N.W.2d 46 (Minn. App.1994), *review denied* (Minn. Mar. 23,

1994). Deli was discharged for reasons unrelated to the videotape incident. *Id.* at 53–54.

Meanwhile, Gabor Deli individually had sued the University, claiming violations of the Data Practices Act and unjust enrichment derived from the University's free use of the Delis' gymnastics facility. The district court granted summary judgment to the University on both claims.

Thereafter, Katalin Deli brought the instant lawsuit. The district court granted summary judgment for the University, concluding, among other things: (1) that information given to the media constituted unrecorded mental impressions of government employees rather than data covered by the Data Practices Act and, alternatively, that collateral estoppel barred the data practices claim; (2) that for lack of consideration, there was no contract governing the delivery of the videotape to the University; and (3) that res judicata precluded the unjust enrichment claim. This appeal resulted.

### ISSUES

1. Did the district court err by granting summary judgment on the data practices claim, concluding that statements the University made to the media were not data covered by the Data Practices Act, and, alternatively, by concluding that collateral estoppel barred the claim?

2. Did the district court err in granting summary judgment for the University on the breach of contract claim, determining that the contract was not supported by consideration?

3. Did the district court err by granting summary judgment without addressing the promissory estoppel claim?

4. Did the district court err in granting summary judgment, holding that res judicata barred the unjust enrichment claim?

### ANALYSIS

██ A court may grant summary judgment

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

Minn. R. Civ. P. 56.03. On a motion for summary judgment, all evidence must be viewed in a light most favorable to the non-moving party. *Bennett v. Storz Broadcasting Co.,* 270 Minn. 525, 531, 134 N.W.2d 892, 897 (1965). On appeal from summary judgment, this court determines whether there are any genuine issues of material fact and whether the district court misapplied the law. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). We view the evidence in the light most favorable to the party against whom judgment was granted. *Id.*

**1. Data Practices.** The first issue is whether the University violated the Data Practices Act (the Act) because of statements that Voelz made to the media in her capacity as women's athletic director.

On February 13, 1993, Voelz said on WCCO radio:

> The [University's grievance] panel did not exonerate Deli * * *. [I]t concluded that she violated NCAA rules, it concluded that she probably asked student athletes to lie, it concluded that she lied to her supervisor, myself, and was insubordinate.

On February 14, 1993, Voelz said on KFAN radio:

> This year I think about a happy, productive, positive team, made up of individuals who believe in their head coach Jim Stephenson. * * * [A] safe, happy and a very good team.

Voelz also is quoted in the March 31—April 6, 1993 issue of the *Twin Cities Reader* as saying regarding Deli:

> We are dealing with advertent violations of NCAA rules, dishonesty, insubordination, asking students to lie, and asking students to lie to police.

The district court determined that these statements were not "data" protected by the Act, but rather, unrecorded mental impressions of a University employee.

██ A party who claims that the Act has been violated must show that "the information disseminated was recorded in some physical form other than in the human

brain." *Keezer v. Spickard,* 493 N.W.2d 614, 618 (Minn.App.1992), *review denied* (Minn. Feb. 12, 1993).

> A plaintiff cannot establish the [Data Practices] Act was violated merely by showing a government employee said something about him and that the statement contained information that arguably might be stored in a government record. If the information in the employee's statement was not actually recorded, then "government data" have not been created or released.

*Id.* Data is not covered by the Act "where data was not 'recorded' or 'stored' anywhere but in public employees' minds." *Unke v. Independent Sch. Dist. No. 147,* 510 N.W.2d 271, 273 (Minn.App.1994) (citing *Keezer,* 493 N.W.2d at 618), *review denied* (Minn. Mar. 15, 1994).

■ The district court properly determined that Voelz's February 14, 1993 statement on KFAN radio was not government data. This statement was not about Deli, nor has Deli shown that this statement was recorded in a government record.[1]

■ Deli argues that the statements given to WCCO radio and the *Twin Cities Reader* are data under the Act. She asserts that these statements came directly from her personnel file and the confidential investigation report in the grievance proceeding. The statements that Deli violated NCAA rules, asked student athletes to lie, and was insubordinate are all found in a letter dated February 8, 1993 (part of the district court record) from the grievance panel to University President Nils Hasselmo. Because the data was recorded prior to the statements made by Voelz, Voelz's statements are government data, not unrecorded mental impressions. In her February 13, 1993 interview with WCCO radio, Voelz said, "The panel did not exonerate Deli. * * * [I]t concluded that * * *." This statement reported the actions of the grievance panel and not her own thoughts. Because this information was stored in a government record and Voelz's statements were based on that record, the statements were not unrecorded

mental impressions. We conclude that the district court erred in determining that the statements were not government data for purposes of the Act, and by granting summary judgment on that basis.

■ The University asserts that the summary judgment is nonetheless appropriate because, even assuming that the statements were data, it had the right to release them as investigative data under the Act.

Deli argues that the data is personnel data protected by Minn.Stat. § 13.43 (1994 & Supp.1995). The University claims that the data is investigative data governed by Minn. Stat. § 13.39 (1994). The dispute comes down to which statutory provision controls public disclosure in these circumstances.

Under the Act, all government personnel data is private, subject to certain statutory exceptions. Minn.Stat. § 13.43, subd. 4. "Private data" is information on individuals that is available to the individual subject of the data but not to the public. Minn.Stat. § 13.02, subd. 12 (1994). Personnel data, however, is public

> if it concerns the existence and status of any complaints or charges against the employee, regardless of whether or not the complaint or charge resulted in a disciplinary action; the final disposition of any disciplinary action together with the specific reasons for the action and data documenting the basis of the action.

Minn.Stat. § 13.43, subd. 2(a).

But the Act also provides that investigative data collected by state agencies

> as part of an active investigation undertaken for the purpose of the commencement or defense of a pending civil legal action, or which are retained in anticipation of a pending civil legal action, are classified as * * * confidential * * *. Any agency * * * *may make any data classified as confidential * * * accessible to* any person, agency or *the public if the agency * * * determines that the access will* aid the law enforcement process, promote pub-

---

1. In her complaint, Deli included other statements that University employees had made to the

media, but these were not specifically presented on appeal.

lic health or safety or *dispel widespread rumor* or unrest.

Minn.Stat. § 13.39, subd. 2 (emphasis added). The University is a "state agency." Minn. Stat. § 13.02, subd. 17. "Confidential data" is information on individuals that is not accessible to the data subject or the public. *Id.*, subd. 3. "Civil legal action" includes both judicial and administrative proceedings. Minn.Stat. § 13.39, subd. 1.

▇ Prior to final disposition of a disciplinary action, all personnel data remains private under Minn.Stat. § 13.43 except for the existence and status of a complaint. Section 13.43 contains no other relevant exceptions. Section 13.39 is even more restrictive, classifying investigative data as confidential if it relates to pending or potential legal action, but it also provides that a government entity may make information public to "dispel widespread rumor."

▇ Final disposition of the University's disciplinary action against Deli occurred on April 12, 1993. The University does not dispute that the statements to the media were made before then, or that the statements contained protected personnel data under section 13.43. The University nevertheless argues that the section 13.39 exception for dispelling widespread rumor enabled the information to be made public. Section 13.39 gives the chief attorney for the University discretion to determine if investigative data relates to a pending or anticipated civil action, and the University determines if making such data accessible to the public will dispel widespread rumor. Minn.Stat. § 13.39, subd. 1, 2.[2] The act is silent, however, as to whether the section 13.39 rumor exception prevails over the section 13.43 personnel privacy mandate. Thus, we confront a legal issue of first impression. Construction of the Act is a legal issue that this court

reviews de novo. *Doe v. State Bd. of Medical Examiners,* 435 N.W.2d 45, 48 (Minn. 1989).

We have held that where the Act conflicts with the Open Meeting Law, the Act prevails to ensure that the protected data remains private. *Unke,* 510 N.W.2d at 274. *Unke* dealt with a school board's disciplinary action involving a guidance counselor. *Id.* at 272. There, the section 13.43 data practices requirement to keep personnel data private prior to final disposition of the matter conflicted with the Open Meeting Law requirement that school board meetings be open to the public. *Id.* at 274.

▇ In another case involving discipline of a public employee, the supreme court stated that section 13.43 makes it

readily apparent that the legislature intended to extend substantial privacy protection to personnel data concerning its employees. Therefore, it is reasonable to conclude that the legislature did not want data concerning the discipline of a government employee released until after the "final disposition" of the matter.

*Annandale Advocate v. City of Annandale,* 435 N.W.2d 24, 29 (Minn.1989). Both the *Annandale* and *Unke* cases stress the importance of protecting personnel data under section 13.43.

The legislated rationale for the release of investigative data under section 13.39 affects such fundamental necessities as law enforcement, public health, public safety, and civil tranquility. For section 13.39 to transcend the "substantial privacy protection to personnel data" mandated in section 13.43, such transcendence must be clearly justified. Here, there is no claim of a threat to fundamental necessities that would enable the district court to award summary judgment on the basis of dispelling widespread rumor un-

---

2. The district court record includes the February 8, 1993 letter in which the grievance panel stated that although Deli had committed certain violations of NCAA rules and been insubordinate, such action was not just cause for dismissal. Both parties received copies of the letter but it was not available to the public. On February 12, 1993, Deli was quoted in the *Star–Tribune* and *Pioneer Press* as saying she was pleased to have been "exonerated" of any wrongdoing. The next

day, Voelz, in her capacity as women's athletic director, stated on WCCO radio that Deli had not been exonerated. Voelz then listed the specific things that the panel had determined Deli did wrong; the statements were protected personnel information and at issue in this case. The exception in section 13.39 arguably applies because the University presented evidence of the rumor that Deli had been fully exonerated and determined it was necessary to dispel that rumor.

der that section as urged by the University. Ordinary rumors are a part of everyday life; section 13.39 contemplates rumors that threaten the community repose.

Mindful of the foregoing caselaw and public policy considerations, we conclude that here the section 13.43 protection of personnel data prevails; the section 13.39 exception for dispelling widespread rumor cannot be applied to justify releasing protected personnel data in the circumstances presented. Whereas the district court properly granted summary judgment to the University concerning the February 14, 1993 statement to KFAN radio, it erred in granting summary judgment with respect to the February 13, 1993 statement to WCCO radio and the statement printed in the March 31–April 6, 1993 issue of *Twin Cities Reader.* Accordingly, we reverse and remand the data practices issue for further proceedings not inconsistent with this holding.

We also reverse the district court's alternative conclusion that collateral estoppel barred Deli from asserting her data practices claim. The purpose of collateral estoppel is to prevent needless consideration of issues decided in earlier litigation. *St. Paul Fire & Marine Ins. Co. v. Central Nat'l. Ins. Co.,* 480 N.W.2d 681, 684 (Minn. App.1992). The elements of collateral estoppel are:

> (1) the issue at hand is identical to an issue in the prior adjudication, (2) there was a final judgment on the merits, (3) the party to be estopped was a party or in privity with a party to the prior adjudication, and (4) the estopped party was given a full and fair opportunity to litigate the adjudicated issue.

*Id.*

In his earlier separate action, Gabor Deli sued the University for violating the Act, and his claim included the three Voelz statements to the media. The district court granted adverse summary judgment on his claim. Katalin Deli was neither a party nor in privity to her husband's action. A husband and wife are not in privity solely because of their marital relationship. *Dart v. McGraw,* 204 Minn. 363, 365, 283 N.W. 538,

539 (1939). Moreover, Katalin Deli did not have a full and fair opportunity to litigate the issue (part of the court's reasoning in Gabor Deli's case was that the statements were about Katalin Deli, not her husband). The merits of Katalin Deli's individual claims were not considered in her husband's action. Collateral estoppel thus does not apply.

**2. Contract.** Deli also claims breach of contract. She gave the videotape containing sexual images to Voelz in exchange for Voelz's promise not to view it. Voelz did, however, view the videotape at the direction of University authorities. The district court granted summary judgment for the University, finding that the promise was not supported by consideration, so there was no contract and thus no breach of contract.

A contract must be supported by consideration. *Baehr v. Penn–O–Tex Oil Corp.,* 258 Minn. 533, 538–39, 104 N.W.2d 661, 665 (1960). Consideration is something of value given in return for a performance or promise of performance that is bargained for; consideration is what distinguishes a contract from a gift. *Id.* A promise to do something that one is already legally obligated to do does not constitute consideration. *Tonka Tours, Inc. v. Chadima,* 372 N.W.2d 723, 728 (Minn.1985). Instead, it is a "mere naked promise." *Hilde v. International Harvester Co.,* 166 Minn. 259, 260, 207 N.W. 617, 618 (1926).

The University argues that Deli was required to return the videotape, and that there was no contract. It asserts that the videotape belonged to the University, and Deli had a legal obligation to return it. Therefore, fulfilling such an obligation is not consideration. Voelz stated in a March 12, 1992 memo to Deli:

> I must ask you * * * to return the Florida meet tape to me immediately, in the condition it was viewed by the student-athletes. It is University property. * * * I remind you that any personal use (during travel or at home) of University tapes or cameras is against University policy, [and] may result in disciplinary action.

Deli concedes that the videotape belonged to the University so she had a legal obligation

to return it, but she contends that by returning the unerased tape containing the sexual images, she gave up her right to privacy. Deli reasons that giving up one's right to privacy constitutes consideration. She also argues that she had a property interest in the images on the videotape separate from the University's ownership of the videotape itself. Finally, Deli contends that the promise was supported by consideration because she and Voelz "negotiated" for almost two weeks before Deli agreed to surrender the videotape.

We reject Deli's arguments. Although Voelz promised not to watch the videotape, in these circumstances, that promise was not supported by consideration. Deli recognized a legal obligation to return the videotape; by returning the videotape she was merely fulfilling that obligation. The images on the videotape were viewed by student members of the University's Women's Gymnastics team—persons with whom the University had a formal relationship. The videotape impropriety involved a University faculty member and became known to a University student in the regular course of University-sponsored women's athletic activities. The University had a duty to investigate the situation, which necessarily involved recovering its own unaltered videotape to verify that to which its students allegedly had been exposed. The University could not have done less and still claim to have thoroughly investigated.

We conclude that the district court correctly denied Deli's cross-motion for partial summary judgment and properly granted summary judgment to the University on the breach of contract claim.

### ■ 3. Promissory Estoppel. Deli

alternatively argues that promissory estoppel applies. Although Deli argued promissory estoppel in the district court, that court did not address the issue in its order and memorandum.[3] Having rejected Deli's breach of

contract claim, the district court was obliged to respond to her associated promissory estoppel claim. We remand for the district court to address the promissory estoppel claim.

### ■ 4. Unjust Enrichment. Deli

claims that the University was unjustly enriched because it had several years' use of the Delis' private gymnastics facility free of charge. The district court determined that res judicata barred Deli's unjust enrichment claim.

It is uncontested that Deli and her husband jointly owned the gymnastics facility. Deli's husband earlier sued the University, asserting the same unjust enrichment claim that Deli now asserts. The district court granted summary judgment for the University, concluding that the Delis expected no financial payment at the time the University was offered use of the gymnastics facility. In support of its holding, the district court cited a letter that Katalin Deli had sent the University stating that the Delis made their facility available to the University for three years free of charge and were continuing to make it available for a limited period of time.

### ■ Res judicata provides that

[a] judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies, not only as to every matter which was actually litigated, but also as to every matter which might have been litigated therein.

*Sundberg v. Abbott*, 423 N.W.2d 686, 689 (Minn.App.1988) (emphasis deleted), *review denied* (Minn. June 29, 1988). "A former judgment is a bar in a subsequent action if the same evidence will sustain both actions." *Hofstad v. Hargest*, 412 N.W.2d 5, 7 (Minn. App.1987).

### ■ The supreme court has held that two

parties who have similar interests in the

---

3. The University's argument that Deli did not plead promissory estoppel and therefore could not raise it on summary judgment is without merit. Notice pleading is in effect in Minnesota. Promissory estoppel is "essentially a variation of contract theory" for purposes of pleading. *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 390

(Minn.1992). Deli pleaded breach of contract, and she argued promissory estoppel on the motion for summary judgment. We believe that the issue is properly before this court. Deli also argued equitable estoppel, but equitable estoppel is subsumed into the promissory estoppel claim.

same realty are in privity. *See Lobnitz v. Fairchild* 186 Minn. 215, 216–17, 243 N.W. 62, 63 (1932) (purchaser of property and previous landowner in privity regarding boundary line dispute); *Stitt v. Smith,* 102 Minn. 253, 255–56, 113 N.W. 632, 634 (1907) (wife in privity to husband with respect to her contingent interest in his realty); *see also Kesler v. Fentress,* 223 Va. 14, 286 S.E.2d 156, 157 (1982) (husband and wife who jointly own land in privity).[4] Although not a party to her husband's action, at all times material, Deli was in privity with her husband as joint owner of the gymnastics facility.

We agree with the district court that Deli's unjust enrichment claim is barred by the doctrine of res judicata. The district court properly granted summary judgment on that claim.

### DECISION

The district court erred by granting summary judgment on the data practices claim; we reverse and remand for proceedings not inconsistent with this opinion as to that claim. We remand for determination of the promissory estoppel claim. We affirm summary judgment on the breach of contract and unjust enrichment claims.

**Affirmed in part, reversed in part, and remanded.**

---

4. This privity differs from privity with respect to the data practices claim. Here, privity is based on joint ownership, not marital status.