**EVEREST DEVELOPMENT, LTD., Appellant,**

v.

**CITY OF ROSEVILLE, Respondent.**

No. C5–96–2535.

Court of Appeals of Minnesota.

July 15, 1997.

---

**342**

George O. Ludcke, Thomas W. Pahl, Kelly & Berens, P.A., Minneapolis, for Appellant.

Roger A. Jensen, Peterson, Bell, Converse & Jensen, St. Paul, for Respondent.

Considered and decided by NORTON, P.J., and PETERSON and AMUNDSON, JJ.

## OPINION

NORTON, Judge.

In this action under the Government Data Practices Act, appellant contends the trial court erred in denying appellant's motion to compel production of documents prepared to settle a lawsuit between the City of Roseville and a prospective developer. We reverse.

## FACTS

In 1986, the Centre Pointe Investment Company (CPIC) and Business Park Limited Partnership entered a development agreement with the City of Roseville (the city) to develop a 60–acre tract of land known as the Centre Pointe Business Park. Pursuant to the parties' agreement, CPIC invested millions of dollars environmentally cleaning and clearing the land. Meanwhile, the city entered into a development agreement with Ryan Companies pertaining to a 200–acre tract of land known as Twin Lakes, which is adjacent to Centre Pointe.

CPIC saw this development agreement with Ryan Companies as direct competition with the development plan for Centre Pointe. Since 1991, when the city entered the agreement with Ryan Companies, the city has promoted the Twin Lakes project and has entered into agreements with other developers for the same purposes that the city had originally targeted for Centre Pointe. CPIC considers these actions to have "hindered, frustrated, and rendered impossible the performance" under the development agreement for Centre Pointe. Consequently, CPIC sued the city, alleging breach of contract and seeking a declaratory judgment of CPIC's rights under the development agreement.

In September 1996, the city arrived at a proposed settlement with CPIC, by which another developer, Ryan Partnership (Ryan), entered into an option with CPIC to purchase the property. Ryan's option to purchase was conditioned upon the city's approval and the mayor's authorization. If Ryan exercised the option, ownership in the Centre Pointe project would then transfer to Ryan, which would assume all of the provisions of the prior development agreement between CPIC and the city. In addition, the city would allow Ryan to negotiate a new or revised development agreement for the Centre Pointe project. Upon exercise of the option and transfer of ownership, CPIC would dismiss its lawsuit against the city.

At the September 9, 1996, city council meeting, the council voted to authorize the Roseville mayor and city manager to execute the settlement documents. Two weeks later, appellant, Everest Development, Ltd. (Everest), a land developer and owner of the Rosedale Corporate Plaza, sent the city a letter requesting copies of the final settlement agreement documents. In the letter, Everest expressed its belief that the city was bound to release the copies of the documents because they constituted public information. The Roseville city attorney informed Everest that the city would not release copies of the settlement agreement documents because the litigation with CPIC would be pending until Ryan exercised its option.

Everest commenced this action, alleging that the city violated the Government Data Practices Act by failing to produce copies of the settlement agreement. After a hearing, the trial court denied Everest's motion to compel on the basis that the documents were not yet public data because litigation was still pending between the parties.

Settlement between CPIC and the city occurred on or about April 16, 1997, before this court heard oral arguments on the case. This court questioned whether the settlement rendered this case moot and requested supplemental memoranda from the parties on the issue.

## ISSUES

1. Is this appeal moot?

2. Are the documents setting forth a settlement between the city and CPIC "protected nonpublic data" exempt from public disclosure under the Minnesota Government Data Practices Act?

## ANALYSIS

**1. Mootness**

■ This court queried whether the settlement and release of settlement documents to Everest rendered a decision on the merits unnecessary.

It is well established that this court will hear only live controversies and will not pass on the merits of a particular question merely for the purpose of setting precedent. If, pending an appeal, an event occurs which makes a decision on the merits unnecessary or an award of effective relief possible, the appeal will be dismissed as moot.

*In re Inspection of Minnesota Auto Specialties, Inc.,* 346 N.W.2d 657, 658 (Minn.1984).

■ Everest contends that this case is not moot because it is "capable of repetition but likely to evade review." *Elzie v. Commissioner of Pub. Safety,* 298 N.W.2d 29, 32 (Minn.1980) (outlining exceptions to mootness). We agree.

[T]he mootness doctrine is a flexible discretionary doctrine, not a mechanical rule that is invoked automatically whenever the underlying dispute between the particular parties is settled or otherwise resolved.

*State v. Rud,* 359 N.W.2d 573, 576 (Minn. 1984).

In various cases, the court has relied on this exception to address the merits of a case that otherwise appeared to be moot. In *Northwest Publications, Inc. v. Anderson,* 259 N.W.2d 254, 256 (Minn.1977), a newspaper unsuccessfully sought to compel the trial court to release a complaint filed in a murder case. Before the hearing on appeal, the trial court vacated its order and allowed the complaint to be filed and released. *Id.* Despite the filing and release of the complaint, the supreme court determined that the case was not moot because it was "capable of repetition, yet evading review." *Id.* at 257 (quoting *Southern Pacific Terminal Co. v. I.C.C.,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911)); *see also Falgren v. State, Bd. of Teaching,* 545 N.W.2d 901, 903 (Minn.1996) (supreme court heard case involving revocation of teacher's license even after the teacher had died, because case involved "issue of public concern that is capable of repetition, yet may evade review"); *State by Archabal v. County of Hennepin,* 505 N.W.2d 294, 296–97 (Minn.1993) (court addressed merits of appeal even though court had already determined ultimate issue over which political subdivisions were arguing).

■ The city contends that this mootness exception does not apply here because the

settlement negotiations in this case were unique. We disagree. Even though the parties crafted a unique settlement agreement to fit the unusual circumstances here, the issues in this case are capable of repetition because the city may use this procedure to negotiate a settlement again. It is necessary for the court to address the nature of the data involved here because, if we do not, other city attorneys in the future may refuse to divulge settlement documents until after settlements are complete, knowing that the documents would be disclosed through the success or failure of the settlement process before the opposing party could bring an appeal and receive a decision on the merits. For these reasons, we consider this case to raise an issue that is capable of repetition, yet likely to evade review. Consequently, we will consider whether the settlement agreement documents were public data.

## 2. Status of the settlement documents

■ In order to evaluate whether the settlement documents were public or nonpublic protected data, we must interpret the Minnesota Government Data Practices Act, Minn. Stat. §§ 13.01–13.99 (1996) (the Act). *See also Keezer v. Spickard,* 493 N.W.2d 614, 618 (Minn.App.1992) (the Act applies to "data," which is recorded information, such as documents), *review denied* (Minn. Feb. 12, 1993). Construction of a statute is a question of law that this court reviews de novo. *Doe v. State Bd. of Med. Examiners,* 435 N.W.2d 45, 48 (Minn.1989); *Deli v. Hasselmo,* 542 N.W.2d 649, 655 (Minn.App.1996), *review denied* (Minn. App. 16, 1996).

The Act establishes a presumption that government data is public and accessible to the public for inspection and copying unless some law defines the data as not public. Minn.Stat. § 13.01, subd. 3. Documents are classified as "protected nonpublic data" when a city collects them

> as part of an active investigation undertaken for the purpose of the commencement or defense of a *pending civil legal action,* or which are retained in anticipation of a pending civil action.

Minn.Stat. § 13.39, subd. 2 (emphasis added). A "pending civil legal action" includes judicial and arbitration proceedings. *Id., subd. 1.*

■ The data at issue here arose from the settlement negotiations between the city, CPIC, and Ryan Partnership. The settlement documents cannot be classified as protected nonpublic data because they were not created for the commencement or defense of a "pending civil legal action," but rather for the settlement of a lawsuit. *Id.,* subd. 2.

Furthermore, "protected nonpublic data" is defined as:

> [D]ata not on individuals which is made by statute or federal law applicable to the data (a) not public and (b) not accessible to the subject of the data.

Minn.Stat. § 13.02, subd. 13 The documents at issue here do not meet this definition. Although the settlement documents are "data not on individuals," they are public data because, to accomplish the purpose for which they were created, the settlement documents had to be "accessible to the subject[s] of the data," the city, CPIC, and Ryan. *See id.,* subds. 4, 13, 14. Critically, the parties to the settlement had copies of the settlement documents at the time Everest brought this motion to compel. Therefore, the fact that the subjects of the data received copies of the settlement documents demonstrates that the city could not treat the documents as "protected nonpublic data" because it could not withhold the documents from CPIC and Ryan and still pursue a settlement.

Finally, we reject the city's reasoning that the documents were protected nonpublic data because the civil legal action was still "pending" until final settlement. The city seeks to label as protected nonpublic data documents that have already been distributed to the city, CPIC, and Ryan during the settlement negotiations. Such analysis would lead to an absurd outcome because, under Minn.Stat. § 13.02, subd. 13, protected nonpublic data is not accessible to the subjects of the data. *See State v. Murphy,* 545 N.W.2d 909, 916 (Minn.1996) (applying Minn.Stat. § 645.17 (1996)) (when construing statutes, court must presume legislature did not intend absurd results). The legislature could not have intended to make settlement documents pro-

tected nonpublic data because the documents, by their very nature, must be made available to the parties to the settlement.

Everest has filed a motion in this court to supplement the record to include the three settlement documents and the development agreement. The trial court reviewed the settlement documents *in camera*, but never reviewed the development agreement. The content of the documents is unnecessary to this appeal, which is addressing procedural and legal issues rather than the factual merits of the appeal. The motion to supplement the record is denied.

### DECISION

The district court erroneously denied the motion to compel. The settlement agreement documents were not created for "the commencement or defense of a pending civil legal action." Furthermore, the settlement documents were not protected nonpublic data because the parties to the settlement, i.e., the subjects of the data under Minn.Stat. § 13.02, subd. 13, had received copies of the documents.

**Reversed.**